FRANK L. CARMODY, as Administrator, etc., of JAMES R. CARMODY, Deceased, Appellant, v. SHERLOCK DAVIS, Respondent.

Second Department, April 13, 1934.

*Matthew T. Abruzzo* [*Arthur N. Field* with him on the brief], for the appellant.

*Walter G. Evans* [*William H. Williamson, Jr.*, with him on the brief], for the respondent.

KAPPER, J. The question involved is, whether an automobile of which the defendant was the owner and which, at the time of the accident causing the death of plaintiff's intestate, was pursuing a military errand, nevertheless subjected the defendant to section 59 of the Vehicle and Traffic Law, which provides that the owner of a motor vehicle shall be liable for negligence in its operation " in the business of such owner or otherwise," where it is operated with the owner's permission, express or implied.

The Fifty-second Field Artillery Brigade was in camp, near Carthage, N. Y., for the period of fifteen days from August 22 to September 6, 1931. The brigade was ordered to camp for field training by the commanding general of the New York National Guard. Around midnight on September fifth, a first sergeant (McIntosh) awoke the defendant, who was a lieutenant and the senior officer in camp at the time, and informed him that a sergeant (McMahon) was driving an army truck in Carthage " in a way that was dangerous to life and property," it being at the same time suggested that McMahon was under the influence of liquor. The defendant directed McIntosh to take a detail of two men to arrest McMahon and to bring the truck back to camp, and to do this McIntosh was to take the car of the defendant, which was then in camp. McIntosh left the camp alone in this car, stating that it was so late an hour that he decided not to awaken any of the soldiers in camp. When proceeding on this errand alone in this car and at a point somewhere near Carthage, McIntosh took three soldiers into the car, one of them being the decedent. He had not proceeded very far when two more soldiers were taken into the car. These five men were able to get inside of the car, the decedent being one of those who got in the front seat with McIntosh. McIntosh then endeavored to locate McMahon but failed to find him and then started back toward the camp; and when he had gone about half a mile, four or five other soldiers got on the running board of the car and continued to ride thereon. The ride proceeding toward the camp, there came an accident upon McIntosh making a turn in the road, and in this accident the car was overturned and several of these soldiers were injured, the decedent's death being caused thereby.

At one of the weekly meetings of the brigade staff prior to their going to camp, the adjutant of the brigade requested the defendant to furnish his car for use in the camp. Under United States Army orders issued by the War Department in Washington, the Adjutant-General's office employed the defendant's car and also a car belonging to the commanding general of this brigade, the War Department orders specifically requiring the employment of two cars with a payment for hire of one dollar per day for each vehicle. The Adjutant-General's office issued authority to this brigade general for the hire of these cars for military purposes and there was an approval of such hiring prior thereto. The hire of the cars was paid to the Adjutant-General's office from funds furnished for this specific purpose by the United States Government. The evidence showed the issuance of the following order:

"HEADQUARTERS, 52ND FIELD ARTILLERY BRIGADE
Office of the Brigade Commander
171 Clermont Avenue
Brooklyn, N. Y.

"August 22nd, 1931.

"Special Orders⎱
   No. 12    ⎰

"1. Inasmuch as these Headquarters have not on hand the motor vehicles authorized by Circular 2 A-1, Militia Bureau, January 5, 1928, under authority contained in paragraphs 18 c, Circular 25 A-21, Militia Bureau, August 30, 1930, the following passenger cars are declared to be official motor vehicles of this organization for the period August 23–September 6, 1931, inclusive, and are each rented to the Government for the sum of one dollar per day:

"Nash Sedan, New York State License 601, owned by Brigadier General William F. Schohl.

"LaSalle Phaeton, New York State License 2K-29, owned by 1st Lt. Sherlock Davis.

"By command of Brigadier General SCHOHL:
                    "VINCENT A. O'NEIL
                        "Captain, FA., NYNG
                            "Adjutant."

The use made of these two cars; that of the defendant and also the general's, was to transport staff officers to various points in the camp, involving at times a distance of from five to seven miles, and for which purposes they were utilized from time to time. When McIntosh made his request of the defendant for a detail to arrest McMahon and to bring back the army truck, at which time the defendant's car was taken for that purpose, the defendant was at

the moment senior camp officer, as I have already stated. McIntosh's request of the defendant to lend him one of the " brigade " cars was complied with.

The foregoing facts are wholly without dispute. Indeed, everything that was proved was not subject to controversy, and there is nothing in the record to show any other situation than that the defendant's automobile was for the time being in military service, and that its use by McIntosh on the occasion in question was a military errand.

The defendant's position in this litigation is that his automobile was in actual use by and under the control of the National Guard of the State and in Federal service, the camp being under Federal orders pursuant to orders from the War Department which commanded this brigade to go to this camp; that under and pursuant to army regulations this car was turned over to the camp authorities, and that its use at the time by Sergeant McIntosh was a military use, the government paying the stated compensation for the use of the car.

Captain O'Neil, adjutant to the commanding general of this brigade, testified that the repairs to the defendant's car, occasioned by the accident, were paid for upon request to the Adjutant-General out of the military fund allotted by the State to this brigade, the payment being approved by the Adjutant-General; and that the request for such payment was not made by the defendant.

Section 15 of the Military Law provides:

" § 15. Relief from civil or criminal liability; security for costs. Members of the militia ordered into the *active service* of the State by any proper authority, *shall not be liable civilly or criminally, for any act or acts done by them in the performance of their duty.*"

The value of this section to the end of exculpating the defendant from civil liability for what unhappily occurred on this unfortunate occasion, it is not necessary to decide, for if the car was in the temporary ownership and control of the military service so far as to deprive the defendant of its use for any but military purposes and then under military direction, as is undisputably the case, possible liability under section 59 of the Vehicle and Traffic Law is out of the case. It may be observed in passing that the United States Supreme Court in *Wilkes* v. *Dinsman* (48 U. S. [7 How.] 89) held a captain in the marine corps not liable when sued civilly by a private for damages for causing him to be flogged, the court holding that the captain was not acting in a private capacity and for private purposes, but was performing responsible duties imposed upon him by the government; and being intrusted with discretion, his exercise of it without malice was an act for which he could not be sued.

The case, in my opinion, is dependent upon no other factor than that of a military order, given for military purposes by the officer in charge of the camp, to take the car, which was not then the defendant's car, but was, according to all of the undisputed evidence, both oral and documentary, a car which was under the control of the military authorities and *pro tem* ownership of the State. In that light, I think the judgment of dismissal was correct.

The judgment and order should be affirmed, with costs.

LAZANSKY, P. J., YOUNG, TOMPKINS and DAVIS, JJ., concur.

Judgment and order affirmed, with costs.